UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK STEVEN GALLEAR,

                Plaintiff,

   v.

CAROLYN W. COLVIN, Commissioner of Social Security,

                Defendant.

Case No. 3:13-cv-05299-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 16, 2009, plaintiff filed an application for SSI benefits, alleging disability as of May 31, 2002. See ECF #9, Administrative Record ("AR") 18, 141.[1]  That application was

---

[1] Plaintiff subsequently amended his alleged onset date of disability to November 16, 2009. See AR 18.

ORDER - 1

denied upon initial administrative review on April 2, 2010, and on reconsideration on June 15, 2010. See AR 18. A hearing was held before an administrative law judge ("ALJ") on July 13, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 32-71.

In a decision dated August 25, 2011, the ALJ determined plaintiff to be not disabled. See AR 18-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 28, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481. On April 19, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on July 12, 2013. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in finding his depressive and learning disorders to be non-severe impairments; (2) in evaluating the opinions of Jan Johnson, Ph.D., and Sophie Hoptowit, M.D.; and (3) in discounting plaintiff's credibility. For the reasons set forth below, the Court agrees the ALJ erred in finding plaintiff's depressive and learning disorders to be non-severe impairments and in evaluating the opinion of Dr. Johnson, and thus in determining plaintiff to be not disabled. Also for the reasons set forth below, however, while the Court finds defendant's decision to deny benefits should be reversed on this basis, this matter instead should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

I.       The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ in this case found plaintiff had severe impairments consisting of degenerative disc disease of the cervical and lumbar spine, drug abuse and a history of alcohol abuse. See AR 21.  The ALJ further found in relevant part at step two:

> The claimant has also been treated or evaluated for other symptoms and complaints, which appear periodically throughout the record.  These include . . . a mood disorder, a mild cognitive disorder, and a learning disorder. . . . Jan Johnson, Ph.D. completed a [state agency] psychological report, and

ORDER - 4

>diagnosed the claimant with a depressive disorder, NOS; a learning disorder, NOS; and, a rule-out cognitive disorder, perhaps mild retardation to borderline intellectual functioning (Ex. 12F, p. 2).  However, [the] claimant did not allege any psychological impairments.  These other conditions, considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment or are otherwise not adequately supported by the medical evidence in the record.  Accordingly, these conditions do not constitute severe medically determinable impairments.

AR 21.  Plaintiff argues the ALJ erred in finding his depressive and learning disorders were not severe impairments.  The Court agrees.

First, while it may be true that plaintiff did not allege in his application for SSI benefits that he had a psychological impairment, he did admit to having a pretty depressed mood at the hearing.  See AR 61.  Plaintiff also reported a number of potential depression-related symptoms – such as poor motivation and difficulties in regard to sleep, appetite and energy – and exhibited tearfulness during the evaluation by Dr. Johnson, who noted signs of problems in plaintiff's cognitive functioning as well.  See AR 343-44, 346-47.  Thus, given the ALJ's duty "to fully and fairly develop the record and to assure that the claimant's interests are considered," the mere fact that plaintiff did not initially allege a mental impairment should not have prevented the ALJ from determining whether in fact such an impairment existed.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).

As discussed in greater detail below, furthermore, Dr. Johnson assessed plaintiff with several moderate to marked work-related mental functional limitations based at least in part on the diagnoses of a depressive disorder and a learning disorder.[3]  See AR 343-45.  The ALJ's error

---

[3] The ALJ's additional statement that plaintiff's "other conditions" had caused "only transient and mild symptoms, are well controlled with treatment or are otherwise not adequately supported by the medical evidence in the record," the Court finds to be impermissibly vague as it references no portion of the record as support therefor or otherwise provide any specific discussion as to why that is the case.  See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (holding that it is insufficient for ALJ to merely state medical opinion is unsupported by sufficient objective findings, and that "ALJ must do more than offer his conclusions").

ORDER - 5

here also is not harmless, given that as also discussed in greater detail below she did not provide valid reasons for according only some weight to those assessed limitations, and therefore erred as well in assessing plaintiff's residual functional capacity and in finding him to be capable of performing other work existing in significant numbers in the national economy at step five of the sequential evaluation process. See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

II.     The ALJ's Evaluation of Dr. Johnson's Opinions

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

ORDER - 6

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In addition to addressing at step two the diagnoses Dr. Johnson provided as noted above, the ALJ went on to further address that medical source's opinion as follows:

ORDER - 7

> A [state agency] evaluation was completed by Jan Johnson, Ph.D., in June 2011. Dr. Johnson opined the claimant has no limitations in understanding, remembering and persistence in following simple instructions, but has marked limitations performing complex instructions; he has moderate limitations in learning new tasks and performing tasks without supervision; he has mild limitations regarding being aware of workplace hazards; he has moderate limitations communicating effectively in a work setting with public contact; and, he has moderate limitations working with the public[4] (Ex. 12F, p. 3). The doctor opined the claimant has a global assessment of functioning (GAF) score of 55[5] (Ex. 12F, p. 3). The undersigned gives some weight to Dr. Johnson's opinions because she is a psychologist, who personally examined the claimant. However, the doctor was vague as to [the] claimant's diagnoses and apparently did not see treatment records. The basis for some of her diagnoses is not clear because she did no psychological testing of [the] claimant except to conduct a mental status examination (Ex. 12F, pp. 4-6) and the claimant did not tell her he felt depressed. In her report, the doctor said [the] claimant "appeared to have adequate attention/concentration abilities," he successfully spelled world forward and backward and repeated five digits backwards. However, he did not want to talk about whether he had been feeling depressed. (Ex. 12F, p. 6). At the hearing, he testified he has 12 years of education. Thus, the report is vague and lacking in objective or even subjective bases for conclusions reached by the doctor. It is given little weight because of those factors but has been considered in arriving at the claimant's [residual] functional capacity . . .

AR 24-25. Plaintiff argues, and again the Court agrees, the ALJ failed to provide valid reasons for discounting the opinion of Dr. Johnson.

As plaintiff notes, there is nothing vague about the diagnoses Dr. Johnson provided. See AR 343 (assessing plaintiff with, among diagnoses of drug and alcohol dependence in reported sustained full to partial remission, "Depressive Disorder Not Otherwise Specified [("NOS")], "Learning Disorder NOS" and "Rule out cognitive limitations perhaps of a mild retardation to borderline intellectual functioning"). In addition, while Dr. Johnson may not have reviewed any

---

[4] As noted by plaintiff, Dr. Johnson also found he had a marked limitation in his ability to maintain appropriate behavior in a work setting. See AR 345.

[5] In a footnote the ALJ further stated: "Based on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Text Revision (DSM-IV-TR), a GAF rating of 51-60 constitutes moderate symptoms or moderate difficulty in social, occupational, or school functioning." AR 24 n.1.

ORDER - 8

treatment records, as an evaluating psychologist there is no requirement that she actually do so,[6] and in any event the ALJ does not point to any such records that call into question the diagnoses, findings and opinions she offered.

The fact that Dr. Johnson did not conduct psychological testing, furthermore, is not itself a valid basis for rejecting that source's opinions. While it is true that such testing can constitute objective clinical support therefor, so too can the results of both a mental status examination and the evaluating psychologist's own observations, which as plaintiff noted Dr. Johnson provided in her report. See AR 343-47; Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.") (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of mental impairment is competent evidence).

The ALJ also bases her rejection of Dr. Johnson's opinions on the fact that plaintiff "did not tell her he felt depressed." AR 25. But as noted above, Dr. Johnson observed plaintiff being "tearful at times during the interview," and stated that he appeared to have poor motivation and energy, all of which are potential symptoms of a depressive disorder. AR 343, 346-47. Plaintiff also reported a history of complaints of depression and alleged suicidal ideation. See AR 342. In addition, the substantial evidence in the record does not support the ALJ's assumption that the

---

[6] Defendant cites Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), for the proposition that an ALJ may reject a psychological assessment from an examining medical source who does not review objective medical data or reports from treating physicians or counselors. See ECF #13, p. 6. But the psychological assessment at issue in that case appears to have come from a non-examining medical source, and therefore clearly the failure to review medical evidence in the record would be a valid basis for rejecting that assessment. See Bayliss, 427 F.3d at 1215, 1217 (referring to doctor, whose opinion ALJ properly rejected for failing to review "objective medical data or reports from treating physicians or counselors" as "reviewing doctor"). In regard to examining medical sources, however, the clinical findings the examining medical source obtained from the evaluation itself may constitute objective medical support for the assessments or opinions that source provides. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician's opinion if inadequately supported by clinical findings).

ORDER - 9

statement "I don't want to talk about it" plaintiff made in response to the question as to whether he had been feeling depressed lately, necessarily indicates an absence of depression.[7] AR 347. Indeed, in the very same paragraph Dr. Johnson notes plaintiff reported "having difficulty with sleep, appetite, and energy," and "experiencing suicidal ideation" – albeit "of a vague nature" – again, all potential signs of a depressive disorder. Id.

The Court agrees as well that the ALJ appears to have focused solely on those aspects of Dr. Johnson's mental status examination results that supported her view that plaintiff lacked any actual objective indicia of a mental health impairment. For example, while it is true that plaintiff appeared to have adequate attention and concentration abilities, Dr. Johnson also noted brief and concrete speech, "significant limitations in his abstract ability" and at least "some limitations in his insight/judgment abilities." AR 346-47. Dr. Johnson based her diagnoses and assessment of functioning it seems at least part on these findings, and the ALJ has failed to adequately explain why her interpretation thereof is more reliable. See McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

Lastly, defendant argues any error on the part of the ALJ was harmless here, because Dr. Johnson estimated that the length of time plaintiff would be subject to the limitations she found would be only six to nine months. See AR 345. As noted by plaintiff, however, the ALJ did not give this as a reason for discounting Dr. Johnson's opinions. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not discuss). Thus while it is

---

[7] See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting those with depression often do not recognize their condition reflects potentially serious mental illness).

ORDER - 10

true that to be found disabled plaintiff must show his impairment "has lasted or can be expected to last for a continuous period of not less than 12 months," the Court itself cannot offer a reason for rejecting a medical source's opinion that the ALJ did not provide, particularly where the ALJ discusses in detail that source's opinion but does not mention the time duration issue. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). In other words, the Court must presume the ALJ was aware of that issue, but chose not to address it.

III.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

ORDER - 11

mental impairments and limitations, and therefore in regard to his residual functional capacity[8] and her ability to perform other jobs existing in significant numbers in the national economy,[9] remand for further consideration thereof is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 31st day of March, 2014.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

---

[8] If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id. The ALJ in this case found plaintiff had the mental RFC to perform simple repetitive tasks involving minimal interaction with the public and little problem solving activity. See AR 22. But because as discussed above the ALJ erred in rejecting the greater functional limitations Dr. Johnson found, it is far from clear that the ALJ's RFC assessment is supported by substantial evidence and therefore free of error.

[9] If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). But because the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy based on vocational expert testimony offered in response to a hypothetical question containing substantially the same limitations as were included in the ALJ's RFC assessment (see AR 26-27), that finding also cannot be said to be supported by substantial evidence and free of error at this time.

ORDER - 12